**GLICKFELD**

v.

**HOWARD VAN LINES, Inc., et al.**

**HOWARD VAN LINES, Inc., et al.**

v.

**GLICKFELD.**

No. 13763.

United States Court of Appeals
Ninth Circuit.

June 11, 1954.

**724**

Irving Glickfeld, New York City, for appellant.

L. M. Phillips, Robert P. Schifferman, Los Angeles, Cal., for appellees.

Before STEPHENS, BONE, and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

Under a written agreement the plaintiff-appellant-cross-appellee, Irving Glickfeld, shipped household goods and personal belongings from New York to Los Angeles via Howard Van Lines, Inc., an interstate carrier operating under the provisions of the Interstate Commerce Act, Title 49 U.S.C.A., including § 20 (11) [1] by virtue of § 319 [2] thereof. Thereafter he brought suit against Howard and Fireman's Fund Insurance Company to recover full compensation for damage to his property allegedly sustained while in Howard's custody, and also for the full value of items of the shipment which were allegedly converted by Howard.

The trial court awarded Glickfeld judgment for damage in accordance with the written agreement which limited the amount of recoverable damages to items delivered and as well for the loss of items not delivered. As to the latter, the court found that (although they were never delivered) they had not been converted by Howard. Glickfeld appealed, contending that he was legally entitled to a judgment for the full value of the damages to his property and for the full value of the property lost. Howard and the insurance company appealed only from that part of the judgment relating to the

---

1. Section 20(11) of the Interstate Commerce Act provides in pertinent part as follows:

   "Any common carrier * * * subject to the provisions of this chapter receiving property for transportation from a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable ·to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier * * * to which such property may be delivered * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier * * * from the liability imposed; and any such common carrier * * * shall be liable to the lawful holder of said receipt or bill of lading * * * for the full actual loss, damage, or injury to such property caused * * * notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void: * * * Pro-

vided, however, That the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply * * * to property * * * received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released * * *." Title 49 U. S.C.A. § 20(11).

2. Section 319: "The provisions of section 20(11) and (12) of this title, together with such other provisions of chapter 1 of this title (including penalties) as may be necessary for the enforcement of such provisions, shall apply with respect to common carriers by motor vehicle with like force and effect as in the case of those persons to which such provisions are specifically applicable." 49 U.S.C.A. § 319.

damaged goods delivered, claiming a lack of evidence to support it.

The written shipping agreement between Glickfeld and Howard provided:

> "Shipper hereby * * * especially agrees to accept for himself and assigns the released valuation of 30¢ per lb. per article. If more than 30¢ per lb. per article, strike out 30¢ and insert figure." (See footnotes 1 and 3 herein.)

Glickfeld's point as to full compensation, and not the 30¢ limitation thereon, for both the damaged goods and for the lost goods is that while it is true Interstate Commerce Commission orders may permit a common carrier to establish rates dependent upon released values of thirty cents per pound per article, in the instance of this case such permission is conditioned upon the requirement that the carrier use the Uniform Household Goods Bill of Lading, which requirement was not met. He argues as to the lost portion of the shipment that it would be against public policy to permit the limited recovery as to undelivered goods.

In accordance with the quoted statute, 49 U.S.C.A. § 20(11), a motor carrier in interstate commerce may limit its liability, but only when it does so in compliance with an Interstate Commerce Commission order authorizing special rates dependent upon either a declaration of value by the shipper *in writing* or a released value *in writing*. See Caten v. Salt City Movers & Storage Co., 2 Cir., 1945, 149 F.2d 428, 432.

The Interstate Commerce Commission has authorized the establishment of rates based upon released values in the transportation of household goods by motor carriers.[3] And the Independent Movers' & Warehousemen's Ass'n, Inc., of which Howard is a member,[4] filed with the Commission[5] its Tariff No. 7 setting forth rates dependent upon released value and establishing rules governing the conditions upon which the rates might be applied.[6]

In the transaction with which we are here concerned, Howard offered Glickfeld and he accepted a rate which in fact is dependent upon a released valuation of thirty cents per pound per article. The limitation of value was set forth *in writing*[7] in both the Order for Service[8] and the Bill of Lading[9] used by Howard. However, Rule 8 of Tariff No. 7, which

---

**3.** Title 49, Code of Federal Regulations § 187.201. *Released rates on household goods—*

"(a) *Establishment authorized; rate bases.* All common carriers of property by motor vehicle performing the specialized service of household goods carriers are hereby authorized to establish and maintain, by filing and posting in the manner prescribed by the Interstate Commerce Act (49 U.S.C. 20(11), 219), commodity rates for the transportation of household goods, namely: The personal effects, * * *

"*Released valuations*      *Rate basis*
Applicable to entire shipment:      Base rate.
Released to value not exceeding 30 cents per pound per article. * * *."

Released Rates Order MC–2A, Jan. 29, 1948, 13 F.R. 874.

**4.** Independent Movers & Warehousemen's Ass'n, Inc., Tariff No. 3-D, shows the list of Participating Carriers and their scope of operating authority.

**5.** As required by Title 49 U.S.C.A. § 6.

**6.** Rule 2, Tariff No. 7, on Household Goods, Independent Movers' & Warehousemen's Ass'n, Inc., makes the rates dependent upon a declared or released valuation not to exceed 30¢ per pound per article.

**7.** As required by the proviso in Title 49 U.S.C.A. § 20(11).

**8.** "Declared Released Value
"The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding 30 cents per pound, per article."

**9.** "Shipper hereby agrees to all the terms on the face and back of this sheet, and especially agrees to accept for himself and assigns the released valuation of 30¢ per lb. per article. If more than 30¢ per lb. per article, strike out 30¢ and insert figure."

Howard filed with the Interstate Commerce Commission, reads as follows:

"(a) Unless otherwise provided, when property is transported subject to the provisions of tariff, the acceptance and use of the *Uniform Household Goods Bill of Lading as described herein is required.*" [Italics ours.]

"(b) The rates shown herein are reduced rates *conditioned* upon the use of the *Uniform Household Goods Bill of Lading.* * * *." [Italics ours.]

Thereafter, at pages 14–16 of the tariff, a document entitled "Combined Uniform Goods Bill of Lading and Freight Bill" is set forth.

In the instant case, Howard issued to Glickfeld a document entitled "Combined Uniform Household Goods Bill of Lading and Freight Bill", which by its own terms is declared to be "subject to the classification and tariffs, rules, and regulations in effect on the date of the issue of this Bill of Lading." The form used by Howard is different from the form set forth in Tariff No. 7. Glickfeld particularly calls our attention to a difference in omission in the Howard form, namely: The form described in Tariff No. 7 has a provision for the declaration of excess valuations of named articles for which an additional charge, not exceeding 2% of the excess value declared, must be made,[10] whereas the form used by Howard provides only that *all* the articles covered by the Bill of Lading are covered by "the released valuation of 30¢ per lb. per article. If more than 30¢ per lb. per article, strike out 30¢ and insert figure." Thus, Howard's Bill of Lading contains no provision enabling a shipper to protect certain specified articles by making a declaration of excess valuation as to them.

At this point it must be noted that a Bill of Lading was not issued for Glickfeld's goods until they were picked up by the carrier. And the facts of this case clearly show that Glickfeld, the shipper, had left New York with his family before Howard's agents picked up the goods. The person who admitted Howard's agents to the shipper's house had no authority to list any particular articles for excess valuation even if such a provision had been present in the tendered Bill of Lading. Furthermore, Howard's agent, Francis H. Kenney, testified as to his conversation with the shipper at the time arrangements were made for the shipment, as follows:

"Well, I told him that the rate was $14.02, based on 30 cents a pound, and that if he wanted to get a higher valuation he could get it from the conversion table in the tariff, and he said it wasn't necessary because he had his own insurance coverage that he was going to get through his broker." [R. 164]

At the same time, the shipper signed an "Order for Service" in which it was stated in bold type as follows:

"Declared Released Value
"The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding 30 [inserted in ink] cents per pound, per article."

Clearly, therefore, neither the shipper nor the carrier with his insurer were prejudiced by the deviation in the form of the Bill of Lading used. In fact, insofar as the instant shipment was concerned, the issued Bill of Lading spoke the truth and covered every relevant requirement of the Interstate Commerce Act and the Commission's regulations.

While it is true that the provisions of the tariff, as published, are binding upon both the shipper and the carrier as a matter of law,[11] those provi-

---

10. See Title 49, Code of Federal Regulations § 187.201.

11. Penna Ry. Co. v. International Coal Co., 1913, 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446; Lowden v. Simonds etc.

Grain Co., 1939, 306 U.S. 516, 59 S.Ct. 612, 83 L.Ed. 953; Crancer v. Lowden, 1942, 315 U.S. 631, 62 S.Ct. 763, 86 L. Ed. 1077; Pacific Portland Cement Co.

sions are not to be read or applied in a manner which would lead to an unjust or absurd conclusion.[12] Where the shipper has not been misled by the deviation, or there is no allegation or proof of an intention or conspiracy to avoid the applicable law it seems to us that the denial of the reduced rate to the shipper or the requirement that the full value should be paid for the damage would be the acme of adherence to form and contrary to the plainest principles of fair dealing.[13]

Section 20(11) of the Interstate Commerce Act (see footnote 1) permits a carrier to limit its liability where it does so in conformity with a commission authorization for rates dependent upon "the value declared in writing as the released valuation of the property". The commission, as we have heretofore adverted, has set forth a formula upon which a carrier may base a released value rate.[14] One of the requirements of the commission's order is that the carrier permit a shipper to protect specified articles in a shipment by declaring an excess value, provided an additional amount not exceeding 2% of the total excess value is charged.

█ The shipper was charged a rate which had been duly filed and approved by the commission, and which was based upon a written declaration of released valuation as to the property. Since Glickfeld, the eventual shipper, asked for and was quoted the lowest rate and, as we have already related, expressed himself as unconcerned with further details for the reason that he was himself insuring against possible shipment losses, the absence of a provision in the bill of lading for a declaration of excess value on specific items was of no primary importance. The shipper got what he bargained for, and the carrier got what it was entitled to under the statute.

█ We turn next to a consideration of Glickfeld's other point, which is that the district court was clearly wrong in failing to find that the undelivered property was converted by the carrier. The litigants agree that if the property has been converted by the carrier, it would be against public policy to permit the carrier to limit its liability and thus to profit from its own misconduct.[15] However, the cases are uniform in holding that the conversion doctrine is pertinent only when there has been a true conversion, i. e., where the carrier has appropriated the property for its own use or gain.[16] The carrier may properly limit its liability where the conversion is by third parties or even by its own employees.[17] In the latter circumstance, while the carrier may have been guilty of negligence in the selection of its employees, it has not been unjustly enriched, nor has it been guilty of any misconduct.

v. Western Pac. Ry. Co., 9 Cir., 1950, 184 F.2d 34; Atchison, T. & S. F. Ry. Co. v. White, D.C.S.D.Cal., 1943, 49 F. Supp. 797. See also, Louisville & Nash. Ry. v. Maxwell, 1915, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853.

12. Foye Lumber Co. v. Penna Ry. Co., 8 Cir., 1925, 10 F.2d 437; Pressed Steel Car Co. v. Eastern Ry. Co., 8 Cir., 1903, 121 F. 609; A. E. West Petroleum Co. v. A. T. S. F. Ry. Co., D.C.W.D.Mo., 1952, 108 F.Supp. 644.

13. American Ry. Express Co. v. Lindenburg, 1923, 260 U.S. 584, 592, 43 S.Ct. 206, 67 L.Ed. 414; see, also, American Exp. Co. v. U. S. Horse Shoe Co., 1917, 244 U.S. 58, 37 S.Ct. 595, 61 L.Ed. 990; Adams Exp. Co. v. Croninger, 1913, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314; Missouri, K. & T. Ry. Co. v. Harriman Bros., 1913, 227 U.S. 657, 33 S.Ct. 397, 57 L.Ed. 690.

14. Title 49, Code of Federal Regulations, § 187.201.

15. Moore v. Duncan, 6 Cir., 1916, 237 F. 780; Railway Express Agency v. Marchant Calculating Machine, D.C.Mun. App., 1947, 52 A.2d 277; Van Dyke v. Penna R. Co., Del.Super., 1952, 86 A.2d 346. See, also, Norfolk & W. Ry. Co. v. Fort Dearborn Coal & Export Co., 4 Cir., 1923, 292 F. 78.

16. Ibid.

17. Ibid.

In the instant case, the vice president of Howard Van Lines, Inc., testified that neither had he nor to the best of his knowledge any other officer of Howard converted appellant's packages to their own use. An employee of Howard testified that the missing packages were loaded on vans for delivery to Glickfeld. We conclude that the court was not clearly in error in finding that the carrier Howard had not converted appellant's property to its own use. Hence, we find against each point raised by Glickfeld in his attack on the judgment.

We turn next to Howard's cross-appeal relating to the district court's application of the thirty cents per pound formula in assessing damages. Howard contends that such an award is not supported by the evidence, since the shipper, Glickfeld, failed to prove a *prima facie* case in damages in that he failed to establish that the property was delivered to the carrier in good condition, and he failed to show the nature and extent of the claimed damage and the amount of loss, if any, sustained. The record does not support either of these claims. The main point argued by Howard is that Glickfeld estimated the damages by considering their worth in New York and their worth in Los Angeles and in some way by using the difference as an element in assessing damages. It is true that the record shows some confusion caused by a commendable and successful effort to shorten the testimony by stipulation. A memorandum prepared by Glickfeld and used by him in his testimony was admitted in evidence under the stipulation that Glickfeld would testify in accord with it. The memorandum set out values "in New York" and values in Los Angeles. The witness clearly testified however that the "in New York" phrase as used, meant, not New York values at all, but meant values of the goods shipped in their condition when the carrier picked them up in New York. He explained that all his testimony as to values relat-ed to the difference in value in Los Angeles between their condition as the carrier took possession of them and their condition as the carrier delivered them in Los Angeles.

Whether the formula of the agreement as to values was correctly applied to arrive at the sum of the judgment, we have not considered because no point thereon has been raised on appeal.

Affirmed.