LERAKOLI, INC.; London Star, New York, Inc.; Tache Et Cie, S.A.; Lieber & Solow, Inc.; Soucol, Ltd.; Rough Diamond Traders, Inc.; and Seven Eighteen Fifth Avenue Corp., Plaintiffs-Appellants,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant-Appellee.

No. 196, Docket 85–7503.

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 1985.

Decided Feb. 5, 1986.

John R. Foster, New York City (Waesche, Sheinbaum & O'Regan, New

---

York City, of counsel), for plaintiffs-appellants.

John R. Romans, New York City (Curtis, Mallet-Prevost, Colt & Mosle, New York City, of counsel), for defendant-appellee.

Before PIERCE, MINER and DAVIS,* Circuit Judges.

MINER, Circuit Judge:

The issues presented by this appeal are whether an agent of the United States Postal Service ("USPS") may assert the liability limitation of the United States Postal Union Convention, January 1, 1976, 27 U.S.T. 345, T.I.A.S. No. 5231 ("Lausanne Convention"), and whether federal or New York common law applies to a mail sender's claim of conversion against a carrier of international mail performing services for the USPS. We hold that an agent of the USPS is entitled to assert such a limitation and, regardless what law is applied, the conversion claim must be dismissed, since appellants have failed to present any evidence of willful or intentional conduct on the part of the mail carrier. We therefore affirm the district court's decision.

## I. BACKGROUND

Appellants, collectively referred to as "Lerakoli," are the owners of eleven packages, alleged to have contained diamonds, delivered to the USPS in New York City for shipment to Belgium via registered mail in 1980. Upon receipt of the packages, the USPS placed them in three separate mail sacks and delivered the sacks to its mail carrier, appellee Pan American World Airways, Inc. ("Pan Am"), for shipment to Belgium postal authorities.[1] Two of these sacks never were delivered in Belgium and never were recovered. The third sack was delivered in Germany, where postal authorities discovered, upon breaking the seal, that Lerakoli's packages were missing from the sack.

Lerakoli commenced this action against the USPS and Pan Am, alleging liability for the loss on the part of the USPS under the Lausanne Convention, an international agreement which establishes a regulatory scheme for the transport of international mail, and on the part of Pan Am under common law principles of bailment, negligence and conversion.[2] On January 26, 1983, at the conclusion of a hearing on motions by the USPS and Pan Am for summary judgment, the district court dismissed the claims against the USPS on the ground that it had tendered to Lerakoli its limit of liability under Article 44 of the Lausanne Convention.[3] Article 44 limits the liability of "postal administrations" for the loss of registered mail to "40 francs [$15.76] per item."

On February 15, 1983, the district court issued a Memorandum of Decision and Order granting Pan Am's motion as to the bailment and negligence claims on the ground that the liability limitation of the Lausanne Convention also applied to Pan Am as an agent of the USPS. *Lerakoli, Inc. v. Pan American Airways, Inc.*, No. 82–3663 (E.D.N.Y. Feb. 15, 1983). However, the court denied Pan Am's motion as to the conversion claim, with leave to renew, following the established rule that liability limitations may not be applied to diminish liability for an intentional act of misconduct. The court therefore permitted Lerakoli an opportunity for discovery on the conversion claim. On April 17, 1985, after Pan Am's renewal of its motion, the court issued a second Memorandum of Decision and Order wherein it decided that federal law should apply to a conversion claim against a carrier-agent of the USPS. *Lerakoli, Inc. v. Pan American Airways, Inc.*, No. 82–3663 (E.D.N.Y. April 17, 1985).

---

* Honorable Oscar H. Davis, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

1. Pan Am was given AV–7 forms with each sack. These forms gave the serial numbers of the sacks and their gross weights but did not state the contents of each package.

2. The action initially was commenced in New York State Supreme Court and was removed to federal district court by the USPS.

3. Lerakoli does not appeal this aspect of the district court's decision.

Consequently, the court dismissed the claim on the ground that Lerakoli, after being given an opportunity for discovery, had failed to present any evidence of an intentional act by Pan Am, as required by federal law.[4] *See Berner v. British Commonwealth Pacific Airlines, Ltd.*, 346 F.2d 532, 536–37 (2d Cir.1965), *cert. denied*, 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966).

Lerakoli now challenges the district court's rulings on several grounds. First, it contends that the terms of the Lausanne Convention relating to limitations of liability apply only to the USPS itself and cannot be extended to include agents such as Pan Am. Lerakoli further argues that a broader interpretation of the Lausanne Convention would require us not only to amend the treaty language, but also would conflict with the general principle that independent contractors performing work for the government are not immune from claims arising out of work done negligently or in an intentionally improper manner. *See Merritt, Chapman & Scott Corp. v. Guy F. Atkinson Co.*, 295 F.2d 14 (9th Cir.1961); *Green v. ICI America, Inc.*, 362 F.Supp. 1263 (E.D.Tenn.1973). Finally, asserting that no reason exists to create federal common law in an action between private parties, Lerakoli contests the district court's application of federal law, and its consequent failure to apply New York law, to the conversion claim. It contends that the New York rule for warehousemen, under which there would be a presumption that Pan Am had converted the packages, *see I.C.C. Metals, Inc. v. Municipal Warehouse Company*, 50 N.Y.2d 657, 431 N.Y. S.2d 372, 409 N.E.2d 849 (1980), should govern.

## II. DISCUSSION

### A. *Liability Limitation Under the Lausanne Convention*

The Lausanne Convention is one of an assortment of international agreements, federal statutes and agency regulations governing the transportation of domestic and international mail in the United States. Article 44 of the Convention, in pertinent part, provides that "[p]ostal administrations shall be liable only for the loss of registered items," and that "[i]n case of loss of a registered letter, the sender shall be entitled to an indemnity the amount of which shall be fixed at 40 francs [$15.76] per item."

Application of this liability provision to a carrier performing services for a postal administration has not yet been squarely addressed by the federal courts. At least one court, however, has considered a similar issue, albeit in dictum. *Caribe Diamond Works, Inc. v. Eastern Airlines, Inc.*, No. 71–2875 (S.D.N.Y. June 24, 1974). In *Caribe*, the sender sought to recover from the postal carrier damages arising out of the nondelivery of certain diamonds sent via registered mail from Puerto Rico to New York. While dismissing the sender's claims on the ground that it had failed to prove the carrier's responsibility for the nondelivery, Judge Brieant noted the possible application to the carrier of certain liability limitations afforded the USPS under federal regulations relating to the level of insurance coverage for a specific package. *Id.* at 18; *see* 39 C.F.R. §§ 161.2(a), 161.-2(b)(2) (1985). He posited that if the USPS were to be considered a bailee,[5] the carrier then would be a sub-bailee. As such, the carrier would be "a party to all of the express or implied rights and privileges of its transferor [USPS] arising under the original bailment," *Caribe*, slip op. at 18–19, and, if any limitation of liability were available to the USPS, there would be "no reason why [it] should not inure to the benefit of all sub-bailees or successors in interest who acquired lawful possession from the original bailee to aid in accomplishing the purpose of the alleged bailment." *Id.* at 19.

---

4. Soucol, Inc., one of the plaintiffs, also moved for partial summary judgment on the issue of liability on the conversion claim. The district court denied this motion.

5. The USPS has been characterized as a bailee of registered mail in past litigation. *United States Fidelity & Guaranty Co. v. United States*, 246 F. 433, 435 (9th Cir.1917).

We agree with the reasoning in *Caribe* and hold that Pan Am, as an agent of the USPS performing services that the USPS otherwise would perform pursuant to its bailment relationship with the sender, may assert Article 44 as a limitation upon its potential liability for the nondelivery. It is established common law doctrine that a sub-bailee may take advantage of a liability limitation contractually agreed upon between the original bailee and bailor. *E.g., Berger v. 34th Street Garage*, 3 N.Y.2d 701, 703, 171 N.Y.S.2d 824, 826, 148 N.E.2d 883, 884 (1958); *Schoeffer v. United Parcel Service of New York, Inc.*, 277 App.Div. 569, 571, 101 N.Y.S.2d 451, 453 (1st Dep't 1950). Here, the Lausanne Convention, as part of the federal regulatory framework for the handling of international mail, prescribes some of the terms to which a sender of registered mail agrees when delivering a parcel to the USPS for transport. These terms form the equivalent of a contractual agreement between the sender and the USPS limiting the liability of the USPS, and, pursuant to agency principles, that limitation is passed on to any party performing services for the USPS.

The nature of air mail carriage under federal law compels this conclusion. While the USPS is empowered to contract with air carriers for the carriage of mail where present systems are inadequate, 39 U.S. C.A. § 5402 (West Supp.1985), air carriers also may be conscripted to provide "necessary and adequate facilities and service for the transportation of mail" pursuant to the provisions of their certificates of public convenience and necessity, 49 U.S.C.A. §§ 1371, 1375 (West Supp.1985).[6] It would be unjust indeed to require air carriers, as a condition of their operation, to perform services otherwise the responsibility of the USPS while at the same time denying them the benefit of the USPS's liability limitation.

In addition, application of Article 44 to Pan Am is appropriate in light of the reasoning of this and other courts in decisions holding that the liability limitations for air carriers under the Warsaw Convention should be extended to employees and agents of such carriers. *E.g., Reed v. Wiser*, 555 F.2d 1079, 1081 (2d Cir.) (employees of air carrier may assert liability limitations under Warsaw Convention even though only air carrier itself is covered expressly), *cert. denied*, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977); *Baker v. Lansdell Protective Agency, Inc.*, 590 F.Supp. 165, 170–71 (S.D.N.Y.1984) (agents of air carrier may assert liability limitation under Warsaw Convention); *Julius Young Jewelry Manufacturing Company v. Delta Air Lines*, 67 A.D.2d 148, 151, 414 N.Y. S.2d 528, 530 (1st Dep't 1979) (same).

The liability limitation provision of the Warsaw Convention could be circumvented by a suit against an employee of a carrier, rather than against a carrier itself, without the expansive interpretation we accorded that provision in *Reed*. This would require a carrier "to provide indemnity for higher recoveries as the price for service by employees who are essential to the continued operation of its airline," *Reed*, 555 F.2d at 1082, and, in turn, would require this added expense to be passed on to airline passengers, *id.*

The implications of failing to extend the Lausanne Convention provision to agents of the USPS are no less severe. While the record reveals nothing to suggest that the USPS would be compelled to indemnify Pan Am for any recovery in this instance, it is beyond speculation that a limited interpretation of the Lausanne Convention would have a major influence on the USPS's ability to contract with airlines for the carriage of mail in the future. At the very least, air carriers would demand higher rates from the USPS for this service, with such added government costs then being passed on to the public in the form of higher postage prices. This, in turn, would be in conflict with the obvious intent of Article 44: to

---

**6.** While Pan Am alleges that it is a *contract* carrier for the USPS, the record is unclear as to whether Pan Am was carrying Lerakoli's mail pursuant to a contract with the USPS or pursuant to a provision in its certificate of necessity and convenience.

limit the financial repercussions of the non-delivery of registered mail on the government agency. Accordingly, Article 44 must be extended to cover the claims against Pan Am.[7]

### B. *The Conversion Claim*

■ As Lerakoli frames the issue, disposition of its conversion claim depends entirely upon whether we deem federal or state common law to apply. Under federal law relating to the carriage of goods, the party asserting a conversion claim has the burden of establishing that the carrier was responsible for the loss due to some willful or intentional conduct on its part. *E.g., Glickfeld v. Howard Van Lines, Inc.*, 213 F.2d 723, 727 (9th Cir.1954) (conversion claim arising under the Interstate Commerce Act); *Clairol, Inc. v. Moore-McCormack Lines, Inc.*, 79 A.D.2d 297, 299, 436 N.Y.S.2d 279, 280–81 (1st Dep't 1981) (conversion claim arising under the Carriage of Goods by Sea Act). By contrast, under New York law governing warehousemen, a prima facie claim for conversion is established upon proof of delivery to the bailee and of failure by the bailee to return the goods to the bailor upon request. *I.C.C. Metals*, 50 N.Y.2d at 665, 431 N.Y.S.2d at 376, 409 N.E.2d at 852. The *bailee* then has the burden of proving the cause of the loss. *Id.*

The district court concluded that, like other federal provisions governing the international carriage of goods, the Lausanne Convention requires the application of federal law, and thus the court dismissed the claim since Lerakoli had not presented "one scintilla of evidence to support an inference of willful misconduct or unjust enrichment on the part of [Pan Am]." *Lerakoli II,* slip op. at 4. We agree with the district court as to the ne-

cessity for applying a federal standard of willful conduct, but also believe that in all likelihood a New York court, applying state law, would not apply the *I.C.C. Metals* rule to the facts here.

■ Application of federal common law to a claim depends upon a balancing of the state and federal interests affected. *In re "Agent Orange" Liability Litigation*, 635 F.2d 987, 990–95 (2d Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). "[B]efore federal common law rules should be fashioned, the use of state law must pose a threat to an 'identifiable' federal policy." *Id.* at 995; *accord Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966).

■ We find that the federal interest in maintaining a uniform scheme of regulation of international mail requires the application of uniform liability standards for claims arising from the nondelivery of the mail. International mail delivery is regulated exclusively under federal law. Such a scheme necessarily calls for uniform liability standards.

■ This is not uniformity "prized for its own sake," *In re "Agent Orange" Liability Litigation*, 635 F.2d at 994, but rather it is uniformity for the preservation of federal regulatory control over the mail. If New York law applied to all cases of nondelivery of international mail arising in the state, the liability limitation of the Lausanne Convention, which we have applied to Pan Am, would be totally vitiated. Air carriers, required by federal statute to carry mail for the USPS, would then be held liable for any nondelivery unless they could set forth specific justifiable reasons

---

7. Lerakoli's contentions relating to the ability of the court to extend the protection of the Lausanne Convention beyond that which is provided by the exact language of Article 44, and the inconsistency between such an expansive interpretation and principles governing the liability of independent contractors who deal with the government, are meritless. As to the limitations of statutory construction, a more restrictive approach than the one which we now take would

not only affect Pan Am and other carriers, but, as we have stated, also would impact upon the USPS in the long-term. The interpretation which Lerakoli would have us adopt, therefore, would be in direct contravention of the underlying intent of Article 44. As to the principles governing independent contractors, such cases, which deal with issues of sovereign immunity, have little application here.

for the loss of the items. Such a liability standard would not only be inequitable, given the lack of choice an air carrier has in accepting mail for delivery and its lack of knowledge of the contents of specific packages, but also would be inconsistent with federal regulation of international mail.

Conversion claims arising out of the international carriage of goods by air or sea long have been subject to federal rules relating to burden of proof. This court and other courts routinely have required the claimant to establish a defendant's willful or intentional misconduct in the prosecution of claims for nondelivery of goods under the Warsaw Convention, admiralty law and the Interstate Commerce Act. *E.g., Berner v. British Commonwealth Pacific Airlines, Ltd.*, 346 F.2d at 536–37 (Warsaw Convention); *Glickfeld v. Howard Van Lines, Inc.*, 213 F.2d at 727 (Interstate Commerce Act); *Insurance Company of North America v. Deutsche Lufthansa A/G and Summit Airlines, Inc.*, 18 Av. Cas. (CCH) 18,232 (S.D.N.Y.1984) (Warsaw Convention); *Clairol, Inc. v. Moore-McCormack Lines, Inc.*, 79 A.D.2d at 299, 436 N.Y.S.2d at 280–81 (admiralty law). The same standard should apply here.

Lerakoli's attempt to distinguish the foregoing cases on the ground that they deal with statutes or treaties which specifically regulate the relationship between the two parties at issue, whereas the Lausanne Convention merely regulates the sender's rights vis-à-vis the USPS, is unconvincing. By holding that Pan Am may take advantage of the liability limitation in the Lausanne Convention, we have concluded that the Lausanne Convention does affect the relationship between the two parties here.

Finally, even if state law were to be applied, we are not convinced that New York would apply the rule of *I.C.C. Metals*. At issue there was the liability of a warehouseman commissioned to store packages in a specific warehouse. The court reasoned that because the bailee was in sole control of the packages throughout the bailment period, it was in the best position to explain the loss of the property. *I.C.C. Metals, Inc. v. Municipal Warehouse Company*, 50 N.Y.2d at 665, 431 N.Y.S.2d at 377, 409 N.E.2d at 854. The carriage of mail by an agent of the USPS, however, obviously is quite a different case. Mail, by its nature, does not stay in one place, but rather changes hands numerous times in transport. Consequently, the lack of control of the goods readily distinguishes this case from *I.C.C. Metals*.

## III. CONCLUSION

For the reasons set forth above, the decision of the district court is affirmed.