**AIRCRAFT INSTRUMENT & RADIO, CO., INC., Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., Defendant.**

No. 99–1317–WEB.

United States District Court, D. Kansas.

July 17, 2000.

Marc A. Powell, Powell, Brewer & Gough, L.L.P., Wichita, KS, Joseph J Janatka, Marc F Katalinic, Stephen A Whelan, Daar, Fisher, Kanaris & Vanek, P.C., Chicago, IL, for plaintiff.

Lynn W. Hursh, Jill Allison Morris, Armstrong Teasdale LLP, Kansas City, MO, Bryce A. Abbott, Michael A. Priddle, Martin & Churchill Chartered, Wichita, KS, for defendant.

### Memorandum and Order

WESLEY E. BROWN, Senior District Judge.

This matter is before the court on the plaintiff's motion for partial summary judgment on the issue of damages (Doc. 23) and on the defendant's motion for summary judgment (Doc. 29). The court finds that oral argument would not assist in deciding the issues presented.

### I. Facts.

For purposes of summary judgment, the court finds no genuine dispute as to the following facts.

1. Aircraft Instrument & Radio Co., Inc. ("Aircraft Instrument") is a Kansas corporation engaged in the business of selling aircraft instrumentation.

2. United Parcel Service ("UPS") is an Ohio corporation engaged in the business of distributing packages and documents.

3. On July 14, 1997, Aircraft Instrument contracted with UPS to ship an aircraft part known as an Inertial Reference Unit ("IRU"), owned by Aircraft Instrument, from Wichita, Kansas, to the Honeywell Corporation in Renton, Washington, for valid consideration pursuant to UPS' Second Day Air service.

4. The UPS Second Day Air waybill provided to plaintiff in connection with the shipment provided in part that:

Each UPS Letter or package is automatically covered against loss or damage up to a value of $100. If additional coverage is desired, mark an "X" in the DECLARED VALUE box and record the value in the space provided. An additional charge will be assessed for each additional $100 or fraction thereof of declared value in excess of $100.

The waybill further provided that:

Unless a greater value is declared in writing on this receipt, the shipper hereby declares and agrees that the released value of each package covered by this receipt is $100, which is a reasonable value under the circumstances surrounding the transportation.

5. Aircraft Instrument did not declare a higher value for the box containing the IRU.[1] Nor did IRU purchase insurance from UPS for the shipment of the box containing the IRU. UPS provided Aircraft Instrument with a bill of lading for the package.

6. On July 16, 1997, the box that was to contain the IRU arrived at Honeywell without the IRU in it.

■ 7. On September 22, 1997, an agent from the Federal Bureau of Investigation wrote a letter to Ms. Michelle Faimon of UPS concerning the incident. Ms. Faimon was a UPS Corporate Overgoods Site Manager in Independence, Missouri. The letter stated in part:

For your information, the FBI is investigating the theft of a package from interstate shipment. On July 14, 1997, Aircraft Instrument & Radio Company ... sent a package via UPS two day air delivery to the Honeywell Corporation.... On July 16, 1997, the package arrived at its destination. However, it did not have the part, an airplane Inertial Reference Unit, in the box. The box appeared to have been opened, and resealed, minus its contents. The UPS waybill number is 1Z6912220200006363. The missing part bears part number HG1050AD05, and serial number 4579. Enclosed are photographs of a similar part.

Before a criminal investigation is conducted to determine who, if anyone, is criminally responsible for the loss, we first would like to make certain that the part was not lost in shipping. We are therefore requesting that you review lost items that were turned into your center to determine if the missing part is among them.

Pl.Exh. D.[2]

8. The IRU had either been taken out or had fallen out of its box at some point while in UPS' possession. Neither party cites any evidence to suggest how or why this happened. After it was separated from the box, the IRU was apparently sent by a UPS agent to the UPS Overgoods Department in Salt Lake City, Utah.[3]

1. The record indicates that the cost of a new IRU is somewhere in the neighborhood of $60,000.

2. UPS objects to the admissibility of the FBI letter on hearsay grounds. As plaintiff points out, however, using the letter to show that UPS was on notice of the missing part and the pending investigation does not constitute hearsay. *See e.g., George v. Celotex Corp.,* 914 F.2d 26, 31 (2nd Cir.1990) (out of court statements offered not for the truth of the matter asserted but merely to show that defendant was on notice is not hearsay).

3. The defendant asserts that "UPS did not lose the IRU; instead, the IRU found its way to the UPS Overgoods Department in Salt Lake City, Utah, where it matured for five months and was then salvaged to NPS because it was not claimed." Def.Mem. at 3.

This assertion is remarkable for its attempt to summarize the incident without acknowl-

9. Items that are separated from their labels or shipping containers are sent by UPS to its Overgoods Department. The Overgoods Department generally retains such items for five months. If an item is not claimed within that time, UPS "salvages" the property by selling it to a company called National Product Sales ("NPS").

10. The IRU remained at the UPS Overgoods Department in Salt Lake City for several months. In November or December of 1997[4], UPS disposed of the IRU by selling it to NPS for $23.53.

11. NPS subsequently sold the IRU to Frank Strickland of High Tech Consulting. Mr. Strickland sent the IRU to Honeywell, the same company that had received the empty box on July 16, 1997, for re-calibration. A representative of Honeywell then contacted Aircraft Instrument and advised it that its IRU had been located. Mr. Strickland subsequently sold the IRU back to Aircraft Instrument.

12. Aircraft Instrument filed a petition in state district court on July 16, 1999, alleging claims against UPS for negligence, breach of contract, constructive trust, and unjust enrichment. UPS removed the action to this court, asserting subject matter jurisdiction under 28 U.S.C. § 1331 and 49 U.S.C. § 14706.[5]

### II. Arguments.

UPS contends that plaintiff's state law claims (except for the breach of contract claim) are preempted by 49 U.S.C. § 14706, which governs liability of interstate carriers transporting property under bills of lading, and further contends that any recovery by plaintiff is limited to $100 by virtue of the declared value limitation in the UPS waybill. In response, Aircraft Instrument first argues that its state claims are not preempted because they fall outside the scope of § 14706, which only covers "loss or injury" to transported property. Plaintiff maintains that the part was never "lost" because it was always in UPS' possession, and that preemption does not apply where the carrier converts the property by selling it to a third person. Similarly, plaintiff contends that the limitation of liability provision in the UPS waybill is unenforceable because UPS engaged in a conversion of the aircraft part, and it would be against public policy to permit UPS to profit from its own wrongdoing.

### III. Standards Governing Summary Judgment.

The standards and procedures for summary judgment are well established and will not be fully repeated here. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24,

---

edging any responsibility (or even action) on the part of UPS. The first clause seems to take the view that "the IRU wasn't lost, we just couldn't find it." The second clause indicates that an inanimate aircraft part was able to locate and travel to Salt Lake City. The third clause indicates that the IRU reached its optimum state in Salt Lake City after having "matured" there for five months. (One must gather from the context that "mature" is a term of art meaning "to sit in a UPS warehouse.") And finally, UPS asserts that the IRU "was not claimed," despite the fact that the FBI had described the part (complete with photo), the sender, the intended recipient, the date of shipment, and the UPS waybill, and had asked UPS to look for the part among lost items turned in to UPS.

**4.** Defendant asserts that the IRU remained at the Overgoods Department for five months. Doc. 28 at 3. Given that the package was

shipped on July 14, 1997, a five month period would mean that the package remained at the Overgoods Center until mid-December. But the defendant also asserts that Aircraft Instrument was advised by Honeywell in November of 1997 that it had received the IRU from a third party, which would mean that UPS disposed of the IRU before the five month period was up. Neither party addressed this apparent conflict in the evidence, but the court concludes that the discrepancy is not material to the legal issues presented.

**5.** The case was removed on the grounds that it is founded upon a right arising under the laws of the United States, and it is an action against a carrier to recover damages for delay, loss, or injury of shipments, arising under 49 U.S.C. § 14706, and the matter in controversy exceeds $10,000, exclusive of interests and costs. See 28 U.S.C. §§ 1441(b) & 1445(b).

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In essence, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

## IV. *Discussion.*

### A. *Preemption.*

■ The court concludes that plaintiff's state law claims for negligence, constructive trust, and unjust enrichment are preempted by § 14706. In *Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913), the Supreme Court reviewed the circumstances giving rise to the federal legislation governing liability of carriers transporting property in interstate commerce:

Prior to [the Carmack Amendment], the rule of carriers' liability, for an interstate shipment of property, ... was either that of the general common law, ... or that determined by the supposed public policy of a particular state ..., or that prescribed by statute law of a particular state....

Neither uniformity of obligation nor of liability was possible until Congress should deal with the subject. The situation was well depicted by the supreme court of *Southern P. Co. v. Crenshaw Bros.* 5 Ga.App. 675, 63 S.E. 865, where that court said:

"Some states allow carriers to exempt themselves from all or a part of the common-law liability by rule, regulation, or contract; others did not. The Federal courts sitting in the various states were following the local rule, a carrier being held liable in one court when, under the same set of facts, he would be exempt from liability in another. Hence this branch of interstate commerce was being subjected to such a diversity of legislative and judicial holding that it was practically impossible for a shipper engaged in a business that extended beyond the confines of his own state, or a carrier whose lines were extensive, to know, without considerable investigation and trouble, ... what would be the carrier's actual responsibility as to goods delivered to it for transportation from one state to another. The congressional action has made an end to this diversity, for the national law is paramount and supersedes all state laws as to the rights and liabilities and exemptions created by such transactions." ***

That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it.

*Id.,* 226 U.S. at 505–06, 33 S.Ct. 148. *See also Underwriters at Lloyds of London v. North American Van Lines,* 890 F.2d 1112, 1121 (10th Cir.1989) ("The Carmack Amendment preempts state common law remedies against common carriers for negligent loss or damage to goods shipped under a lawful bill of lading.").

Against this background, plaintiff's argument that there was no "loss" of property because the property was in fact in UPS' possession is unpersuasive. The scope of federal preemption in this area is broad enough to subsume the claims asserted. There was a "loss" of the property insofar as plaintiff was concerned because UPS failed to deliver the property to the intended recipient, failed to account for the property, and eventually disposed of the IRU as unclaimed property. The resulting injury to plaintiff was the loss of its interstate shipment. The preemptive effect of § 14706 cannot be overcome simply by characterizing the loss as a conversion or as some other tort. *Cf. Chemsource,*

*Inc. v. Hub Group, Inc.,* 106 F.3d 1358, 1362 (7th Cir.1997) (the Carmack Amendment preempts a state law conversion claim against a carrier for loss to interstate shipment); *Rini v. United Van Lines, Inc.,* 104 F.3d 502, 506 (1st Cir. 1997) ("Because the three state claims at issue in this appeal involve no injury save the loss of property, ... we find them to be preempted."). Accordingly, the court finds that the state law claims in question are preempted.

### B. *Declared Value Limitation of Liability.*

Plaintiff argues that the waybill provision purporting to limit UPS' liability to $100 is unenforceable because of UPS' alleged conversion of the IRU. *Citing Glickfeld v. Howard Van Lines, Inc.,* 213 F.2d 723 (9th Cir.1954).

Public policy has long permitted, if not favored, liability limitations of the type at issue here. *See e.g., Adams Express Co. v. Croninger,* 226 U.S. 491, 509, 33 S.Ct. 148, 57 L.Ed. 314 (1913). Section 14706(c)(1)(A) of Title 49 expressly permits a carrier to establish rates under which the liability of the carrier is limited to a value established by written agreement between the carrier and the shipper, if that value would be reasonable under the circumstances surrounding the transportation. Any number of cases may be found enforcing limitations adopted pursuant to this and other federal statutes governing interstate transportation. *See e.g., Hill Construction Corp. v. American Airlines, Inc.,* 996 F.2d 1315, 1319–20 (1st Cir.1993).

It is true, as plaintiff argues, that some courts have said it would violate public policy to permit a carrier to profit from its own wrongdoing where the carrier converted the property to its own use. *See e.g. Glickfeld,* supra. (Most of these comments are actually dicta, appearing in cases where the carrier's limitation on liability was enforced by the court. *Cf. Hill Construction,* 996 F.2d at 1320 (noting that *Glickfeld* court's comment was dicta)). Nevertheless, an examination of the cases shows how narrow any such exception is.

According to *Glickfeld,* "the cases are uniform in holding that the conversion doctrine is pertinent only where there has been a true conversion, i.e., where the carrier has appropriated the property for its own use or gain." *Id.,* 213 F.2d at 727. Thus, "[t]he carrier may properly limit its liability where the conversion is by third parties or even by its own employees." *Id.* In *Rocky Ford Moving Vans, Inc. v. United States,* 501 F.2d 1369 (8th Cir.1974), the court enforced a limit on a carrier's liability despite an allegation that the carrier's willful misconduct led to the property's destruction. *See id.* at 1373 (suggesting that in the absence of fraud, even willful misconduct does not overcome a declared value limitation). Likewise, in *American Cyanamid v. New Penn Motor Express,* 979 F.2d 310 (3rd Cir.1992), the court upheld a declared value limitation, opining that "nothing short of intentional destruction or conduct in the nature of theft of the property will permit a shipper to circumvent the liability limitations in a released value provision." *Id.* at 315–16. The *American Cyanamid* court rejected an argument that the carrier's willfulness rendered the provision unenforceable. It noted that in many cases of lost goods the carrier's actions may be reasonably characterized as willful, but policy considerations still weigh in favor of enforcing the declared value limitation "particularly since the shipper can protect itself by paying for a higher level of protection." *Id.* at 316.

■ An application of these standards to the undisputed facts shows that, notwithstanding UPS' apparent negligence in losing and improperly disposing of the package, UPS is still entitled to the benefit of the limitation on the amount of the loss. There is no evidence here of an "intentional destruction or theft" of plaintiff's property. Nothing is cited to show that the loss of the package was due to anything other than negligence on the part of UPS. There is apparently no evidence to show how the part initially became separated

from its container. Once it was separated, however, it was treated by UPS as a lost or unclaimed item. Plaintiff makes much of the fact that UPS was notified by the FBI about the missing part but still disposed of it as an unclaimed item. Nothing suggests this was anything other than a case of the right hand at UPS not knowing what the left hand was doing. There is no evidence that any UPS agent involved in the disposition of the property was actually aware of the owner's identity but decided to dispose of the property anyway in order to benefit UPS. Regardless of whether state law might characterize UPS' actions under these circumstances as a constructive conversion, plaintiff has failed to present evidence of the type of intentional destruction or theft of property necessary to meet the federal standard for avoidance of a declared value limitation. Similarly, the court concludes that UPS' eventual disposition of the property as an unclaimed item for $23.53 does not qualify as the type of "appropriation of the property for the carrier's own use or gain" that would make it against public policy to give effect to the limit on liability agreed to by the parties.

In *Adams Express* the Supreme Court explained why limitations of the type at issue are not against public policy:

> The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of the contract of transportation, between the parties to that contract. *** It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and freedom of

contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss.

*Id.*, 226 U.S. at 510–11, 33 S.Ct. 148. Plaintiff may feel it is unfair to apply the $100 limit when UPS' actions caused the loss of a $60,000 part. But as the Court noted long ago in *Hart v. Pennsylvania R. Co.*, 112 U.S. 331, 340, 5 S.Ct. 151, 28 L.Ed. 717 (1884): "Neither is it conformable to plain principles of justice that a shipper may understate the value of his property for the purpose of reducing the [shipping] rate, and then recover a larger value in case of loss."

Under the circumstances, the court concludes that the limitation is enforceable, and that any liability on the part of UPS for loss of the shipment is limited to $100. The court assumes from the tenor of UPS' brief that insofar as plaintiff's breach of contract claim is concerned, UPS concedes it is liable to plaintiff for $100 for the loss of the shipment. The court will direct the clerk to enter judgment accordingly. Given the circumstances of the case, the court concludes it is appropriate for each party to bear its own costs in the action.

## V. *Conclusion.*

Plaintiff's Motion for Partial Summary Judgment on Damages (Doc. 23) is hereby DENIED;

Defendant's Motion for Summary Judgment (Doc. 29) is hereby GRANTED; and

The clerk is directed to enter judgment in favor of plaintiff Aircraft Instrument & Radio Co., Inc., and against defendant United Parcel Service, Inc., in the amount of $100. Each party is to bear its own costs.