887 F.2d 443
 58 USLW 2238
 NATIONAL SMALL SHIPMENTS TRAFFIC CONFERENCE, INC. and The
Health and Personal Care Distribution Conference,
Inc., Petitioners,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents,
Roadway Express, Inc.; National Freight Claims & Security
Council of American Trucking Associations;
National Motor Freight Traffic
Association, Inc., Intervenors.
 No. 89-3163.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 7, 1989.
Decided Oct. 10, 1989.
Rehearing and Rehearing In Banc Denied Nov. 6, 1989.
 
 Daniel J. Sweeney (argued) and John M. Cutler, Jr., Washington, D.C. for petitioners.
 Virginia Strasser (argued), I.C.C., Robert Burk, Craig M. Keats, Office of Gen. Counsel, John P. Fonte, John J. Powers, III, and James F. Rill, U.S. Dept. of Justice, Appellate Section, Antitrust Div., Washington, D.C., for respondents.
 Kenneth E. Siegel (argued), Robert S. Digges, Jr., Alexandria, Va., and William W. Pugh, Gen. Counsel, Nat. Motor Freight Traffic Assn., Inc., Alexandria, Va., for intervenors/respondents.
 Before MANSMANN, NYGAARD and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 In the world of commercial shipping freight by common or contract carrier, as regulated by the Interstate Commerce Commission ("I.C.C. or Commission"), the shipper ordinarily declares the freight's value in the bill of lading. Some tariffs filed with the I.C.C. contain a clause providing that if the shipper fails to declare a value, the shipment will be insured at the lowest rate permitted in the tariff. This is commonly known as the "inadvertence clause."The question for decision in this petition for review of an order of the Commission, by National Small Shipments Traffic Conference, Inc., and the Health and Personal Care Distribution Conference, Inc. ("Petitioners"), is whether the Commission properly decided that tariffs containing inadvertence clauses are not per se illegal. We hold that the Commission did not err, and therefore, deny the petition for review.
 
 
 2
 Jurisdiction was proper in the Interstate Commerce Commission based on 49 U.S.C. Sec. 17. Jurisdiction on appeal is proper based on 28 U.S.C. Secs. 2321(a), 2342(5). The petition was timely filed under Rule 4(a), F.R.App.P.
 
 I.
 
 3
 The petitioners are associations of approximately 300 companies that are regular customers of the general freight trucking industry. They filed a complaint with the Commission seeking to have tariff provisions containing "automatic release" or "inadvertence clauses" declared void.
 
 
 4
 They claim that provisions, such as those contained in Item 3010-C of Roadway Express Tariff 301-C, I.C.C. RDWY 301-C, are per se violations of sections 11707 and 10730(b) of the Interstate Commerce Act ("Act"). 49 U.S.C. Secs. 10730, 11707. The Roadway Express Tariff provides:
 
 
 5
 a. Commodities as described above, other than new will be accepted for transportation by carrier subject to the following:
 
 
 6
 (1) Released to value exceeding $.10 per pound ... 85% of applicable Class Rates.
 
 
 7
 (2) Released to value exceeding $.10 per pound, but not exceeding $1.00 per pound ... 95% of applicable Class Rates.
 
 
 8
 (3) Released to value exceeding $1.00 per pound, but not exceeding $2.50 per pound ... 97% of applicable Class Rates.
 
 
 9
 (4) When consignor declares actual value exceeding $2.50 per pound, shipment will be rated at ... 150% of applicable Class Rates.
 
 
 10
 2. If consignor fails to declare a released value at the time of shipment, shipment will be subject to the lowest released value herein.
 
 
 11
 3. Failure of the consignor to declare that commodity as "used" shall not alter the application of this item.
 
 
 12
 Brief for Petitioner at 7-8.
 
 
 13
 Petitioners' attack centers on Item 2, commonly known as the "inadvertence clause." If such a clause is present in a tariff, and a shipper fails to declare a value in the bill of lading, then the shipper is insured at the lowest rate permitted in the tariff. The shipper also generally pays for shipping at the lowest rate permitted in the tariff. The tariff is not part of the bill of lading. It is a separately published statement that is incorporated by reference into the bill of lading.
 
 
 14
 The I.C.C. considered and rejected petitioners facial challenge to tariffs containing inadvertence clauses. The Commission held that Machines, Data Processing, Classification Ratings, 353 I.C.C. 661 (1977), and numerous other decisions, made clear that "including an inadvertence clause in a released rates tariff is [not] a proper basis for finding the tariffs ... unlawful and ordering them cancelled." National Small Shipments Traffic Conference, Inc., and Drug and Toilet Preparation Traffic Conference, Inc. v. Consolidated Freightways Corp. of De., No. MC-C-30102, at 4 (I.C.C. Jan. 13, 1989) [hereinafter "I.C.C. Op."].
 
 II.
 
 15
 Like most administrative appeals, this case turns on the standard of review. The Supreme Court in Chevron U.S.A., Inc. v. N.R.D.C., Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) held:
 
 
 16
 When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguous expressed intent of Congress. If, however, the court determines that Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of administrative interpretation. Rather, ... the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 
 
 17
 Id. at 842-43, 104 S.Ct. at 2781-82 (footnotes omitted).
 
 
 18
 Before us petitioners reassert the argument they made before the Commission that inadvertence clauses are per se illegal based on sections 10730(b) and 11707 of the Act. 49 U.S.C. Secs. 10730(b), 11707. They argue that the language and legislative intent of Congress in enacting these sections is clear, and that therefore, this court is constrained to follow that clear intention and declare tariffs containing inadvertence clauses void.
 
 
 19
 We do not share petitioners' view that there is a pristine clarity to sections 10730 and 11707. Neither the plain language, and its legislative history, nor case law interpreting these sections is clear. Accordingly, we do not interpret the statutory language de novo, but are required to determine whether the agency's answer is based on a "permissible interpretation" of the statute. Chevron, 467 U.S. at 843, 104 S.Ct. at 2782.
 
 
 20
 Our starting point is the statutory language:
 
 
 21
 (b)(1) Subject to the provisions of paragraph (2) of this subsection, a motor common carrier providing transportation ... [may] establish rates for the transportation of property (other than household goods) under which the liability of the carrier ... is limited to a value established by written declaration of the shipper or by written agreement between the carrier ... and shipper if that value would be reasonable under the circumstances surrounding the transportation.
 
 
 22
 (2) Before a carrier ... may establish a rate for any service under paragraph (1) of this subsection, the Commission may require such carrier ... to have in effect and keep in effect, during any period such rate is in effect under such paragraph, a rate for such service which does not limit the liability of the carrier....
 
 
 23
 49 U.S.C. Sec. 10730.
 
 
 24
 (a)(1) A common carrier providing transportation or service ... shall issue a receipt or bill of lading for the property it receives for transportation under this subtitle ... [and is] liable to the person entitled to recover under the receipt or bill of lading ... [for] the actual loss or injury to the property....
 
 
 25
 (c)(1) A common carrier may not limit or be exempt from liability imposed under subsection (a) of this section except as provided in this subsection. A limitation of liability or of the amount of recovery or representation or agreement in a receipt, bill of lading, contract, rule, or tariff filed with the Commission in violation of this section is void.
 
 
 26
 * * *
 
 
 27
 (4) A common carrier may limit its liability for loss or injury of property transported under section 10730 of this title.
 
 
 28
 49 U.S.C. Sec. 11707.
 
 III.
 
 29
 The petitioners present a series of arguments to support their position. We have considered each contention and conclude that most do not require extensive discussion.
 
 A.
 
 30
 They argue that section 11707(c)(1) expressly prohibits tariff liability disclaimers. But the plain language of that section prohibits only those tariff disclaimers that are in violation of section 11707. By implication, it would, therefore, follow in logical order that this subsection endorses tariff disclaimers that comply with section 11707. This is a classic example of a disjunctive syllogism. Either A or B; but not A; therefore, B. Or as the statute provides: a carrier may not limit liability except as permitted in this subsection; a limitation of liability in violation of Sec. 11707 is void, therefore, a limitation of liability consistent with the regulations of Sec. 11707 is valid. See R. ALDISERT, LOGIC FOR LAWYERS: A GUIDE TO CLEAR LEGAL THINKING 163 (1989).
 
 
 31
 Alternatively they contend that when read together, sections 10730 and 11707 require that any release of liability be "established by written declaration of the shipper, or by a written agreement," and the publication of an inadvertence clause in a tariff does not satisfy the requirements of a written agreement. The I.C.C. determined, and we agree, that a bill of lading, taken together with the filed tariff containing an inadvertence clause, can constitute a written agreement between the carrier and shipper. I.C.C. Op. at 3. This determination was premised on the long-standing principle that a shipper is deemed to be aware of, and agrees to be bound by, the tariff under which it is shipping, and that before carriage can begin, the parties enter into a contract of carriage embodied in a bill of lading. Neither the language, nor legislative history of sections 10730 or 11707 prohibit such an interpretation.
 
 B.
 
 32
 Petitioners then argue that the legislative history of the statute clearly prohibits inadvertence clauses. Petitioners begin by outlining the development of the common law rule of full liability for carriers. See Coggs v. Bernard, 2 Ld.Raym. 909, 92 Eng.Rep. 107 (1703). This rule was codified in 1906 in the Carmack Amendment (currently codified at 49 U.S.C. Sec. 11707) which prohibited carriers from limiting their liability in any way. But the courts loosened this requirement and allowed shippers to declare the value of their goods and be charged lesser rates for goods of lesser value. After this occurred, carriers began charging exorbitant rates for shipments insured at full value. See Adams Express Co. v. Croninger, 226 U.S. 491, 509, 33 S.Ct. 148, 153, 57 L.Ed. 314 (1913). This prompted swift Congressional reaction. Congress enacted the Cummings Amendment (now codified primarily at 49 U.S.C. Sec. 10730), which allowed carriers to limit their liability, but gave the I.C.C. the power to approve rates. By 1980, the requirement of I.C.C. approval of tariff rates was removed by the Motor Carrier Act. Petitioners advance the theory that the 1980 Motor Carrier Act in effect rolled back the law to Adams Express. From these premises they argue that limitation of liability by the carrier can be brought about only when the shipper declares the value of the goods. We reject this theory for several reasons. First, there is no indication that at the time of Adams Express, our courts were ever introduced to, or discussed, inadvertence clauses. Second, there is nothing in the language or legislative history of the 1980 Motor Carrier Act which indicates that Congress even thought about the validity of automatic release clauses. See generally, H.R.Rep. No. 1069, 96th Cong., 1st Sess. 1-103, reprinted in 1980 U.S.Code Cong. & Admin.News 2283-2338. Third, we are satisfied that Congress intended to authorize the Commission to approve released rate provisions, and left the question of inadvertence clauses as one properly for the Commission to resolve in filling in the gaps implicitly or expressly left by Congress. See Drug & Toilet Preparation Traffic Conf., Inc. v. United States, 797 F.2d 1054, 1058 (D.C.Cir.1986).
 
 
 33
 Indeed, Congress has delegated to the I.C.C. broad discretion in dealing with tariffs, see 49 U.S.C. Sec. 10762 (I.C.C. prescribes requirements for tariffs), and value limitations, 49 U.S.C. Sec. 10730(b) (requires that limited value be reasonable, a determination that is left to the I.C.C. under section 10701). The Administrative Procedure Act provides that when an agency is given discretion to make a decision, it can only be overturned if it is arbitrary, capricious, or an abuse of discretion. 5 U.S.C. Sec. 706(2)(A).
 
 IV.
 
 34
 We conclude that the I.C.C. did not err in concluding that inadvertence clauses in tariff provisions are not per se illegal. The Commission applied basic contract law and determined that the presence of such a clause in a published tariff, taken together with a bill of lading, may constitute a written agreement.
 
 A.
 
 35
 Petitioners' primary response to the I.C.C.'s written agreement concept is to contend that such a practice was not permitted at common law. Brief for petitioners at 25, 29. This argument lacks merit. We do not examine here isolated fundamentals of common law tort liability of centuries past. We are looking at contract limitations to tort liability that are also recognized at common law. We are looking also at the gloss applied by federal statutes and I.C.C. regulations over the years. See e.g., Ruston Gas Turbines, Inc. v. Pan American World Airlines, 757 F.2d 29, 32 (2d Cir.1985) (court upheld the validity of an inadvertence clause contained in a tariff finding that the shipper made a "fair, open, just and reasonable agreement").
 
 
 36
 Moreover, the Commission's decision was consistent with recent decisions holding that where a tariff contained an inadvertence clause, the parties had in reality entered into a written agreement. E.g., Mechanical Technology, Inc. v. Ryder Truck Lines, Inc., 776 F.2d 1085 (2d Cir.1985); W.C. Smith, Inc. v. Yellow Freight Systems, Inc., 596 F.Supp. 515 (E.D.Pa.1983). The Commission noted that the petitioners here participated in another proceeding before the Commission, Machines, Data Processing, Classification Ratings 353 I.C.C. 661 (1977). In that case these same petitioners supported adoption of a released rates provision that contained an inadvertence clause. The released rates provision at issue in this case was patterned after the released rates provision in Machines. See I.C.C. Op. at 4-5.
 
 B.
 
 37
 Petitioners ask that we reject the I.C.C. decision in this case and all other authority condoning inadvertence clauses. They assert that this line of cases was incorrectly decided and should be abandoned. Petitioners advocate adopting the teachings of General Electric Co. v. McLean Trucking Co., C.A. No. 85-0417-A (E.C.Va.1985) (unpublished) (Brief for National Motor Freight Traffic Assoc., appendix G). We reject petitioners' argument. We note that the General Electric case has not been followed by most courts, see e.g., Mechanical Technology, Inc., 776 F.2d 1085; W.C. Smith, 596 F.Supp. 515. More importantly, this court does not meet this issue ab initio. We lack the authority to make a de novo review of the issues presented. The Commission rejected the General Electric case, and the only question before us is whether the I.C.C.'s rejection was permissible. We hold that it was.
 
 V.
 
 38
 Petitioners final argument is that the Commission's decision should be reversed because it indicates a departure from the previous I.C.C. policy of discouraging inadvertence clauses. Brief for petitioner at 20-24 (see e.g., Loss and Damage Claims, 340 I.C.C. 515, 522 (1972) (released rates must be agreed to in a written declaration)). However, it is well-settled that:
 
 
 39
 [r]egulatory agencies do not establish rules of conduct to last forever; they are supposed, within limits of the law and of fair and prudent administration, to adapt their rules and practices to the Nation's needs in a volatile, changing economy. They are neither supposed to regulate the present and the future within the inflexible limits of yesterday.
 
 
 40
 American Trucking Assocs. v. Atchison, Topeka and Santa Fe Ry. Co., 387 U.S. 397, 416, 87 S.Ct. 1608, 1618, 18 L.Ed.2d 847 (1967). That the I.C.C. may have changed its position on this issue does not constitute reversible error under our limited standard of review.
 
 VI.
 
 41
 We have carefully considered all contentions presented by the petitioner, but settled law dictates that the reviewing court may not impose its own construction of a statute when the agency administering that statute has previously construed it. Our role here is to determine whether the agency's determination "is based on a permissible construction of the statute." Chevron 467 U.S. at 843, 104 S.Ct. at 2782. We conclude that it was. The Commission's decision on inadvertence clauses was within its discretion to address as a function of "filling in the gaps of Congressional authorization." Id.
 
 
 42
 Accordingly, the petition for review will be denied.