**Francisco GONZALEZ, et al., Plaintiffs,**

v.

**Charles T. ROMANISKO, et al., Defendants.**

**Civ. No. 87–0446.**

United States District Court,
M.D. Pennsylvania.

Aug. 22, 1990.

John Dunn, Stroudsburg, Pa., for plaintiffs.

Calvin R. Koons, Pa. Atty. General's Office, Harrisburg, Pa., for defendants.

MEMORANDUM AND ORDER

CONABOY, Chief Judge.

I

This action was initiated by the Plaintiffs against eleven present and former state police officers. The Plaintiffs allege that their constitutional rights were violated on March 24, 1985, when the Defendants mistakenly obtained and executed a search warrant on the Plaintiffs' home believing it to be the home of one Martin Moore, a neighbor of the Plaintiffs, who was the target of a long-standing drug investigation.

After a three-day trial, the jury on September 21, 1989, returned a verdict in favor of four of the five Plaintiffs and against

---

one of the Defendants, Thomas Mastruzzo, in the amount of $76,480.00.

The Defendant Mastruzzo was the arresting officer in the case and was the Defendant who signed the affidavit which was submitted to a magistrate outlining the probable cause for searching the home in question. Among other things, that affidavit incorrectly identified the Plaintiffs' home as that of the person who was the target of the investigation, Martin Moore.

The Defendant, Mastruzzo, here moves for judgment notwithstanding the verdict based on allegations of qualified immunity and insufficiency of the evidence.

Alternately, the Defendant Mastruzzo moves for a new trial challenging

(A) the Court's instruction on the standard of liability;

(B) the improper allowance of the testimony by an "expert" witness on law enforcement;

(C) the Court's instruction concerning the requirements of the Pennsylvania Rules of Criminal Procedure; and

(D) because the verdict is against the weight of the evidence.

At the same time, the Plaintiffs have moved for a new trial "with respect to punitive damages only". The Plaintiffs claim they were denied a request for instruction to the jury on the basis of the standards "set forth in *Smith v. Wade*, 461 U.S. 30 [103 S.Ct. 1625, 75 L.Ed.2d 632] (1983)."

## II

■ The major issue presented in this appeal is whether the Defendant Mastruzzo, against whom the verdict was awarded, should have been found by this Court to be legally clothed with immunity from responsibility or whether there was sufficient evidence presented to the jury to overcome such immunity. The Defendant moved for summary judgment on the issue of immunity prior to the trial of this case. This Court denied that motion finding there were a number of operative facts in dispute which precluded the granting of summary judgment. The reasonableness of the Defendant's conduct was thereafter submitted to the jury and the jury found that the Defendant Mastruzzo did not act reasonably under all of the circumstances of this case and his duties as a police officer.

The Defendant, in pursuing this argument, and indeed, the Plaintiffs in opposing the argument, call our attention to basically the same group of cases, particularly *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); and *Anderson v. Creighton, Jr.*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). These cases discuss the need to balance the immunity which officials such as prosecutors and police need to allow them to carry out their duties without fear of constantly defending themselves against insubstantial claims for damages and the important interests of the public to recover damages for the unreasonable invasions or violations of their rights under the Laws and Constitution of the United States.

In *Harlow*, supra, the Supreme Court held that Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); and *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

In *Malley*, the Supreme Court was faced with a question of the degree of immunity to be accorded a defendant police officer in a damage action under 42 U.S.C. § 1983, when it was alleged that the officer caused the Plaintiffs to be unconstitutionally arrested by presenting a judge with a complaint and a supporting affidavit which failed to establish probable cause.

The Court there held the same standards of objective reasonableness that were applied in the context of a suppression hearing in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) define

the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest. The Court held that only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost. The court in *Malley*, said the question there was whether a reasonably well trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant under the conditions existing in that case.

The *Malley* court, in commenting on what it referred to as the "Harlow standard" stated as follows:

We do not believe that the Harlow standard, which gives ample room for mistaken judgments, will frequently deter an officer from submitting an affidavit when probable cause to make an arrest is present. True, an officer who knows that objectively unreasonable decisions will be actionable may be motivated to reflect, before submitting a request for a warrant, upon whether he has a reasonable basis for believing that his affidavit establishes probable cause. But such reflection is desirable, because it reduces the likelihood that the officer's request for a warrant will be premature. Premature requests for warrants are at best a waste of judicial resources; at worst, they lead to premature arrests, which may injure the innocent or, by giving the basis for a suppression motion, benefit the guilty.

See *Malley*, supra, 475 U.S. at 343, 106 S.Ct. at 1097.

*Anderson* was a case in which suit was brought against an FBI agent seeking damages resulting from the warrantless search of a resident's home. The agent, Anderson, filed a motion for dismissal or for summary judgment and before any discovery took place, the district court granted summary judgment on the ground that the search was lawful and that the undisputed facts revealed that Anderson had probable cause to search the resident's home and that his failure to obtain a warrant was justified by the presence of exigent circumstances. On appeal to the 8th Circuit the matter was reversed and on further appeal to the Supreme Court, that court in turn, vacated the judgment of the court of appeals and remanded the case to the district court for further proceedings consistent with its opinion. The Supreme Court in effect held that summary judgment should not have been granted absent the discovery of additional facts bearing on the issue of all of the circumstances that existed at the time the decision to make the search was made. The Supreme Court commented as follows in remanding the case:

The Court of Appeals specifically refused to consider the argument that it was not clearly established that the circumstances with which Anderson was confronted, did not constitute probable cause and exigent circumstances.... It simply does not follow immediately from the conclusion that it was firmly established that warrantless searches not supported by probable cause and exigent circumstances violate the 4th Amendment that Anderson's search was objectively legally unreasonable. We have recognized that it is inevitable that law enforcement officials will in some cases, reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonable believe to be lawful—should not be held personally liable.... The same is true of their conclusions regarding exigent circumstances.

The relevant question in this case, for example, is the objective (albeit fact—specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law *AND* the information the searching officers' possessed. Anderson's subjective beliefs about the search are irrelevant.

The principles of qualified immunity that we have reaffirmed today require that Anderson be permitted to argue that he is entitled to summary judgment on the ground that, in light of the clearly estab-

lished principles governing warrantless searches, he could, as a matter of law, reasonably have believed that the search of the Creightons' home was lawful. (emphasis added)

The foundation upon which these legal principles rest is not difficult to understand, i.e. protecting an official's right and obligation to act without constant fear of being sued, as balanced against a citizen's right to recover damages in the event of an unreasonable violation of that citizen's constitutional rights. The long and sometimes convoluted opinions of the Appellate Courts (philosophical musings?) are not always as easily understood. Certainly the determinations of the Appellate Courts are difficult to apply to specific litigation.

Here, for instance, the Defendant Mastruzzo would apparently have us hold that the reasonableness of his conduct is a legal issue which should not have been submitted to the jury even though there was sharp divergence and contrast in the testimony in this case and even though traditionally, the question of the "reasonableness" of a person's conduct is a unique province of the jury. We find no case which categorically holds that this is strictly a determination for the court and may not be submitted to a jury, even though many of the cases discuss the propriety of summary judgment.

The undisputed testimony in this case revealed that the investigation into drug related activity which gave rise to this search was ongoing for a long period of time and involved a large number of officers and police authorities. It was known for a long period of time that one Moore was the target of the investigation and that surveillance was ongoing concerning his home, his telephone and his person. His home was apparently on a piece of ground fronting the property of the Plaintiffs. The testimony further revealed that the authorities had considerable time to observe activities ongoing in what they thought was the home of the target Moore. Indeed, the Defendant Mastruzzo had been taken to the site of what he was informed was the residence of the target Moore, although his attention apparently was mistakenly brought to the home of the Plaintiffs.

The testimony further revealed that when the time came to sign the affidavits seeking the warrants to allow the search in this case, Mastruzzo was designated at the person to sign the affidavits seeking those warrants. The testimony also revealed that the law of Pennsylvania requires the person making that affidavit to follow certain specific directions,[1] and further, that those directions are set out clearly on the forms used by Mastruzzo to seek the warrant. The Defendant would have us find that he was under absolutely no obligation other than to accept the bare assertions of any fellow officers and to sign a document containing whatever those officers stated. This, in spite of the fact, that there was testimony in the case which revealed significant differences among the officers as to the proper methodology and steps followed in making certain that any home identified was properly the property or residence of the target involved. There is absolutely no

---

1. Rule 2006 of the Pennsylvania Rules of Criminal Procedure provides:
CONTENTS OF APPLICATION FOR SEARCH WARRANT
Each application for a searach warrant shall be by written affidavit(s) singed and sworn to or affirmed before an issuing authority, which affidavit(s) shall:
(a) State the name and department, agency or address of the affiant;
(b) Identify specifically the items or property to be searched for and seized;
(c) Name or describe with particularity the person or place to be searched;
(d) Identify the owner, occupant, or possessor of the place to be searched;

(e) Specify or describe the crime which has been or is being committed;
(f) Set forth specifically the facts and circumstances which form the basis for the affiant's conclusion that there is probable cause to believe that the items or property identified are evidence or the fruit of a crime, or are contraband, or are otherwise unlawfully possessed or subject to seizure, and that these items or property are located on the particular person or at the particular place described;
(g) If a "nighttime" search is requested (i.e. 10 p.m. to 6 a.m.), state additional reasonable cause for seeking permission to search in nighttime.

evidence in the record that Mastruzzo made any effort to ascertain the accuracy of the information in the affidavit which he signed and submitted in an effort to secure the warrant in this case. There is, of course, testimony that he relied on the statements of other officers involved in this case. But there is considerable conflicting testimony as to the propriety of the conduct of some of the officers in this case, particularly those who were designated to identify the appropriate property to be searched which could justify a jury's finding that it was unreasonable not to question the accuracy of the information submitted to Mastruzzo.

## III

This Court followed the concepts in *Harlow, Malley,* and *Anderson* in presenting this matter to the jury and tried to outline for the jury the manner in which they could determine the reasonableness or unreasonableness of the Defendant officer's conduct. It was in that vein that the court brought to the attention of the jury the Rule 2006 of the Pa.Rules of Criminal Procedure which has to do with the contents of an application for a search warrant and allowed the testimony of the expert for the Plaintiffs (a lawyer and former prosecutor) on the issue of the proper method to be used in filling out an application for a search warrant so that the jury would have some guidelines in determining the nature of the Defendant's conduct.

What in essence was submitted to the jury was the reasonableness of the Defendant's conduct under the circumstances as a well-trained police officer. When the reasonableness of a person's conduct is submitted to a jury it should not be submitted in a vacuum. The jury needs and is entitled to know what standards will be used in judging that person's conduct. Traditionally, this is a place in a trial where expert testimony is not only proper, but necessary. In addition, where there is a rule of procedure which describes proper conduct, it is proper to bring that rule to the attention of the jury. To do otherwise would be asking the jury to do the impossible, that is, to determine the reasonableness of conduct where there is no standard against which it is measured.

In trying to determine whether or not it is appropriate to allow the testimony of a proposed expert, the court is initially required to determine whether that person has sufficient education, training, background and experience to give him a claimed font of knowledge not available to the general public. Once a positive determination is made on this point, the next issue to be determined is whether or not the proposed evidence or testimony would be relevant to the case at issue and whether or not it would be helpful to the jury in making the necessary judgments in the case. The expert offered here was a person with legal and prosecuting background who was properly trained and educated and who had considerable experience in the area of applying for and executing things such as search warrants. Clearly, this type of testimony was relevant and could very well and very properly have been used by the jury in reaching its decision in this case.

There is always room to disagree with a jury verdict or to second-guess that verdict. There is generally, too, room for sympathy for the position of all sides in a trial such as this. Certainly there is no more precious and important right under our Constitution than to be safe and secure in one's home from unreasonable and incorrect searches and seizures. The harm and fear that occurs as a result of such a massive, unexpected and inappropriate intrusion into a person's life and property cannot be exaggerated. At the same time, the pressures and complications of a police officer's duty, particularly in the course of a large drug investigation, are substantial. It is not an inappropriate demand, however, that officers under such circumstances are required to act in a reasonable fashion and that they use their professional training and expert knowledge to insure that no innocent person's rights are violated.

This case was submitted to the jury on the basis of those standards and within the

guidelines of the case law cited herein and as understood by this Court.

Within that context and based upon the reasoning and facts we have cited in this opinion, this Court cannot say the verdict was against the weight of the evidence. The record demonstrates the opposite i.e. that there was indeed ample testimony upon which the jury based its finding.

Under all of the circumstances described herein, we find no merit in the Defendant's motions.

## IV

 In their motion for a new trial, Plaintiffs argue that the Court erred in refusing to instruct the jury on the entitlement of the Plaintiffs to punitive damages if they could meet the standards set forth in *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). It is true, of course, the Supreme Court in *Smith v. Wade* held that a jury may be permitted to assess punitive damages in an action under § 1983 when the Defendant's conduct is shown to be motivated by evil motive or intent, or when Defendant's conduct involves reckless or callous indifference to the federally protected rights of others. Before a Court allows such an issue to go to a jury, however, it must be persuaded that there is sufficient evidence of the alleged conduct upon which a jury could base such a finding. In this case there is no evidence on the record upon which a jury could reasonably find evil motive or intent or upon which it could find reckless or callous indifference to the rights of the Plaintiffs exhibited in the conduct of the Defendants and, therefore, it would have been erroneous to allow such a question to go to the jury. Indeed, the jury's response to Question # 7, wherein they found that the Plaintiffs did not prove any of the Defendants were grossly negligent, confirms the correctness of the court's decision not to allow the issue of punitive damages to go to the jury.

Under the circumstances, we find no merit in the Plaintiffs' motion for new trial on the issue of punitive damages.

## V

Based on full review of this case and the applicable law recited herein, we will deny the Defendant's motion for judgment notwithstanding the verdict and the Defendant's motion for a new trial, and we will further deny the Plaintiffs' motion for a new trial.