**AMERICAN CYANAMID COMPANY,**
Appellant,

v.

**NEW PENN MOTOR EXPRESS,**
**INC., Appellee.**

No. 92–1334.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit Rule 12(6)
Oct. 26, 1992.

Decided Nov. 4, 1992.

Michael T. Scott, Christine L. Ciarrocchi, Reed, Smith, Shaw & McClay, Philadelphia, Pa., for appellant.

Paul D. Keenan, Andrew J. Walko, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., William D. Bierman, Westwood, N.J., for appellee.

Before: GREENBERG, NYGAARD, and HIGGINBOTHAM, Circuit Judges.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

## I.

## BACKGROUND

This matter is before this court on appeal from an order entered April 15, 1992, dismissing this case for lack of subject matter jurisdiction without prejudice to the appellant American Cyanamid Company pursuing its claim in a state court. We will affirm.

The facts on which Cyanamid relies and which we will treat as not being in essential dispute are as follows. Cyanamid, through its Lederle Laboratories Division, manufactures DTP, a vaccine for immunization of infants and children against diphtheria, tetanus, and pertussis. Not surprisingly, care must be taken to preserve the vaccine which cannot be sold if frozen. 21 C.F.R. § 620.6(g). On February 6, 1989, Cyanamid contracted with the appellee, New Penn Motor Express, Inc., a motor carrier, pursuant to Cyanamid's own written bill of lading, to deliver a sealed shipment of 7,000 vials of DTP from Cyanamid's facility in Pearl River, New York, to the United States Defense Department Depot in Mechanicsburg, Pennsylvania. Cyanamid's bill of lading included a "released value" clause, in conspicuous dark type stating that "the agreed or declared value of the property is hereby specifically stated by [Cyanamid] to be not exceeding $1.65 per pound or any higher value permitted by RRO–972 or $.50 per pound, whichever value results in the lowest transportation charges." Since the DTP weighed 1,260 pounds, this released value

provision in itself set a value of $2,084 for the DTP, the released property.[1] The bill of lading also contained a printed provision in dark type reading "drugs or medicines, N.O.I.B.N." followed by specific instructions for the delivery reading in conspicuous type "protect from freezing," "must be delivered by 2/8/89," "packed in wet ice," "notice to consignee," "do not refrigerate in transit," "do not freeze," and "after inspection, upon arrival, store between 2–8c (35–46f)."

The bill of lading was accepted by New Penn on February 6, 1989, when it picked up the DTP and signed a receipt reciting "rush ... must be delivered 2/8/89" and "protect from freezing." New Penn did not comply with the instructions in the bill of lading and, notwithstanding the winter season, did not protect the DTP from freezing. Rather, according to Cyanamid, New Penn permitted the vaccine to sit in an unheated, uninsulated trailer while it gathered enough other goods to justify sending a truck to the Mechanicsburg Depot.[2] When New Penn delivered the DTP on February 10, 1989, it was worthless, having been destroyed by the cold.

On September 29, 1989, Cyanamid submitted a claim to New Penn for $53,936.75 for its loss, but New Penn rejected the claim. Thereafter, Cyanamid brought this action for the contract price of the DTP, $908,040, in a complaint that did not explain the striking difference between the amount of the claim and the contract price. Cyanamid asserted that there was federal question jurisdiction under 28 U.S.C. § 1331, diversity jurisdiction under 28 U.S.C. § 1332, and jurisdiction under 28 U.S.C. § 1337(a), as this case was being brought under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707, and the matter in controversy exceeds $10,000, exclusive of interest and costs.

After answering, New Penn moved for a partial summary judgment limiting its liability to $2,084 in accordance with the released value of the DTP in the bill of lading, but on March 17, 1992, the district court entered an order denying the motion. The order recited that New Penn could limit its liability if it gave Cyanamid "a reasonable opportunity to choose between full or limited levels of carrier liability," and if it issued "a receipt or bill of lading ... before the freight [was] transported." However, the order stated that New Penn might have intentionally deviated from the bill of lading and in those circumstances could be estopped from relying on the released value limitation. Furthermore, the court, citing *National Semiconductor Corp. v. Commercial Lovelace Motor Freight, Inc.*, 560 F.Supp. 908 (N.D.Ill. 1983), held that there were facts in dispute regarding the reasonableness of the limitation of liability in light of the circumstances surrounding the transportation.

Thereafter, New Penn successfully moved for reconsideration. Upon reconsideration, in an order entered on April 15, 1992, the district court succinctly recited that Cyanamid's "damages are limited to ... $2,084.00 pursuant to ... the bill of lading" and that even if Cyanamid "can establish an intentional deviation from the terms of the bill of lading, the limitation on [New Penn's] liability would still apply." The court cited *Deiro v. American Airlines, Inc.*, 816 F.2d 1360 (9th Cir.1987), and *Rocky Ford Moving Vans, Inc. v. United States*, 501 F.2d 1369 (8th Cir.1974), as support for its holding. Thus, it dismissed the case, as the $10,000 jurisdictional threshold in 18 U.S.C. § 1337(a) had not been met. Cyanamid appeals from the order of April 15, 1992.

---

1. New Penn in its brief indicates that "RRO–972" refers to a rail tariff. While this is not clear from the record, we need not pursue the point as New Penn does not seek to establish a lower value by reason of that item, nor does it seek a lower valuation predicated on the $.50 per pound figure. We note that while the parties do not dispute the calculation of $2,084, our multiplication indicates that the correct figure was $5 less.

2. New Penn indicated it delayed delivery in order to accumulate more items because the depot's policy was to receive larger shipments in order to avoid having many trailers on its premises. But in our disposition we disregard this explanation.

## II.

## CYANAMID'S CONTENTIONS

Cyanamid points out that under the Carmack Amendment, a carrier is liable for "the actual loss or injury to the property" which it receives for transportation.[3] 49 U.S.C. § 11707(a)(1). But it acknowledges that under 49 U.S.C. § 11707(c)(4), a carrier may limit its liability pursuant to 49 U.S.C. § 10730(b)(1), which provides that a carrier may "establish rates for the transportation of property ... under which [its] liability ... is limited to a value established by written declaration of the shipper or by written agreement between [it] and [the] shipper if that value would be reasonable under the circumstances surrounding the transportation."[4] It further notes that a limitation of liability under 49 U.S.C. § 10730(b)(1) is contractual in nature and thus must be effectuated through a written agreement with the shipper evidencing the shipper's "absolute, deliberate and well-informed choice," quoting *Carmana Designs Ltd. v. North American Van Lines, Inc.*, 943 F.2d 316, 319 (3d Cir.1991) (further references to quotations omitted). Cyanamid recites that in *Carmana* we recognized that a "carrier may limit its liability only if it takes the following four steps":

(1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.

943 F.2d at 319 (further references to quotations omitted).[5]

Cyanamid then urges even if the released valuation of $2,084 was not unreasonable as a matter of law under 49 U.S.C. § 10730(b)(1), there was at least a dispute of fact on the point, so that New Penn could not obtain summary judgment. In this regard, it correctly points out that the district court in its order of March 17, 1992, explicitly indicated that there was a disputed factual question regarding the reasonableness of the limitation of liability, and yet did not directly address this issue in its April 15, 1992, order dismissing this action. Finally, Cyanamid contends that New Penn intentionally deviated from and disregarded the explicit terms of the bill of lading and that Cyanamid cannot be held to have assumed the loss from such conduct. Thus, Cyanamid argues, since New Penn breached the contract, it cannot invoke its benefits to limit its liability.[6]

3. We are exercising plenary review as we are deciding the case through the application of legal precepts.

4. There is an exception with which we are not concerned in 49 U.S.C. § 10730(b)(1) regarding the right to limit liability for household goods.

5. While New Penn urges that Cyanamid has conceded that these four conditions have been met, Cyanamid indignantly denies that it made that concession, though it does acknowledge that New Penn has maintained a tariff permitting it to carry goods on a released value basis. This dispute, however, is more apparent than real, as what Cyanamid actually is contending is that the specific circumstances of this case with respect to the reasonableness of the valuation and the intentional deviation preclude a finding that the four steps were taken. Thus, Cyanamid does not contend that New Penn did not give it an opportunity to obtain a higher level of liability or that a receipt or bill of lading was not issued.

6. As we previously noted, the district court dismissed the action for lack of subject matter jurisdiction because damages were limited to $2,084, and thus did not reach the $10,000 jurisdictional threshold in 28 U.S.C. § 1337(a) and, of course, did not reach the $50,000 diversity of citizenship threshold in 28 U.S.C. § 1332(a). Cyanamid does not contend that this jurisdictional disposition was improper, an argument it might have advanced on a theory that regardless of the district court's ultimate conclusion, "the matter in controversy" exceeded the $10,000 jurisdictional floor in 28 U.S.C. § 1337(a) and dismissal was therefore improper. We can understand why it may not have made much practical difference to Cyanamid whether the case was dismissed or not once liability was limited to $2,084, particularly since it appears that New Penn has no defense to a claim for that sum, so that the state court litigation the district court contemplated should not be necessary. Nevertheless, we are not to be understood as endorsing or not endorsing a jurisdictional dismissal in the circumstances of this case, *see Lunderstadt v. Colafella*, 885 F.2d 66, 69–70 (3d Cir. 1989), though we recognize that there seems to be precedent for such a disposition when liability is contractually limited to less than $10,000.

## III.

## ANALYSIS

■ We reject Cyanamid's contention that there was a factual dispute as to the reasonableness of the released valuation of the DTP. To start with we point out that Cyanamid's argument on the point comes with ill-grace. Cyanamid does not claim to be an unsophisticated shipper at the mercy of an experienced carrier. The released value was specified on Cyanamid's own form of bill of lading and, in these circumstances, it seems fair to hold it to the terms it established. *See Carmana,* 943 F.2d at 321–22; *Mechanical Technology, Inc. v. Ryder Truck Lines, Inc.,* 776 F.2d 1085, 1088–89 (2d Cir.1985). Indeed, we consider it somewhat bizarre for a shipper, obviously in a better position to know the value of the goods shipped than the carrier, to contend that the released value it designated was unreasonable.

■ As we have noted, Cyanamid seeks to avoid the limitation on New Penn's liability by pointing out that under 49 U.S.C. § 10730(b)(1), a limitation of liability to a value less than the full value of the goods shipped must be reasonable "under the circumstances surrounding the transportation." The difficulty with its argument is that the statute does not provide that the released value must be reasonably related to the actual value of the goods. Thus, the Court of Appeals for the Second Circuit in entertaining a petition for review of orders of the Interstate Commerce Commission permitting a carrier to limit its liability by including deductibles within its tariff explained:

> Petitioners argue that a deductible is fundamentally different from the tradi-

tional released rate because the latter represents the value of the property shipped, whereas the former is a predetermined amount to be subtracted from that value. This contention misperceives the thrust of the term 'value' in § 10730. The reference in that section to 'a value established by written declaration of the shipper or by written agreement,' is not a reference to the intrinsic worth of the property but rather to the maximum compensation that the parties agree the shipper may recover for a loss. *Cf. George N. Pierce Co. v. Wells, Fargo & Co., supra,* 236 U.S. [278] at 285, 35 S.Ct. [351] at 353 [59 L.Ed. 576 (1915)] ('[T]he legality of the contract does not depend upon a valuation which shall have a relation to the actual worth of the property.'). Likewise at common law there was no requirement that the agreed 'value' have any relation to the property's intrinsic worth. *See id.* at 283–85, 35 S.Ct. at 353–54; *see also Hart v. Pennsylvania Railroad, supra,* 112 U.S. [331] at 341, 5 S.Ct. [151] at 156 [28 L.Ed. 717 (1884)] (shipper and carrier may agree to liquidated damages).

*Shippers Nat'l Freight Claim Council, Inc. v. ICC,* 712 F.2d 740, 748 n. 8 (2d Cir.1983), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3534, 82 L.Ed.2d 839 (1984).

■ In fact, a requirement that a released value have a relationship to actual value would introduce an element of uncertainty into a shipper's claim for damages, for the parties could not know in advance what that reasonable relationship might be. Would 50% of actual value be the floor below which goods could not be valued, or would it be some lesser or greater figure? [7]

*See National Semiconductor Corp. v. Commercial Lovelace Motor Freight,* 560 F.Supp. at 910–11.

7. Cyanamid points out that "[a] large disparity between the actual and released values might well constitute *one* factor to be considered in the requisite reasonableness determination, but [it] has never argued that it should be the *only* factor considered." Reply brief at 5. Cyanamid also would consider as "circumstances surrounding the transportation," what it characterizes as New Penn's "outrageous, intentional con-

duct" in accepting the shipment under the clear and explicit terms of the bill of lading and then doing nothing to deliver the shipment on time and instead permitting it to freeze. We agree with Cyanamid that a limitation on liability in a released value clause may be invalidated by the carrier's conduct in handling the goods so that a value, though initially reasonable, may become unreasonable during the transportation. Thus, as we explain below, if the carrier intentionally destroys the goods or steals them, the released value will no longer be reasonable in the circumstances surrounding the transportation.

Cyanamid in effect recognizes the uncertainty that acceptance of its position would introduce into the law, as it urges that "questions of 'reasonableness' are almost without exception regarded as within the province of the jury." Brief at 11. Clearly, when a matter is committed to a jury determination its resolution is difficult to predict. Thus, while juries appropriately may determine what is reasonable in other contexts, using a jury to determine the reasonableness of the released value of goods lost in transit would undermine the basis of rate structures establishing the released value, as rates are predicated in part on assumed values if goods are lost. *See National Small Shipments Traffic Conference, Inc. v. United States,* 887 F.2d 443, 444 (3d Cir.1989), *cert. denied,* 495 U.S. 918, 110 S.Ct. 1947, 109 L.Ed.2d 309 (1990).[8]

Cyanamid also contends that New Penn is liable because it intentionally deviated from the terms of the bill of lading by not protecting the DTP from freezing and by delivering it two days late.[9] The district court rejected this contention, citing *Deiro v. American Airlines, Inc.,* 816 F.2d 1360, and *Rocky Ford Moving Vans, Inc. v. United States,* 501 F.2d 1369. *Deiro* involved an action by an owner of several dogs killed or injured allegedly by reason of the carrier's gross negligence in exposing them to excessive heat during their transportation. The carrier moved for partial summary judgment limiting the claim to $750 pursuant to a liability limitation in the owner's passenger ticket. In response,

the owner contended that even if the limitation had legal effect it could not "shield [the carrier] from its own gross negligence." 816 F.2d at 1366. The court rejected the owner's argument and granted partial summary judgment, as it held that under "the federal common law, only an appropriation of property by the carrier for its own use will vitiate limits on liability." *Id.*

The facts in *Rocky Ford Moving Vans* parallel those on which Cyanamid relies because in *Rocky Ford* the carrier, like New Penn here, intentionally deviated from the contract. In *Rocky Ford,* the carrier transported goods for the government pursuant to a contract which forbade their storage in any warehouse not approved by the Military Traffic Management and Terminal Service. Nevertheless, the carrier's agent placed the goods in an unapproved warehouse where they were destroyed in a fire. Notwithstanding the allegedly intentional deviation, the court limited the government's claim against the carrier to the released value of the goods, as it found no merit "under the facts in this case, in the Government's attempted distinction between willful breaches of carriage contracts and those which are merely negligent." 501 F.2d at 1372. The court indicated that only fraud or intentional destruction of the property, and not willful misconduct, would vitiate the released value limitation. *Id.* at 1372–73.

We distill the principle from *Deiro* and *Rocky Ford* that nothing short of intention-

But we decline to use the proviso that the value must be reasonable in the "circumstances surrounding the transportation" to expand on the bases for liability which we address in dealing with Cyanamid's intentional deviation argument.

**8.** *National Semiconductor Corp. v. Commercial Lovelace Motor Freight, Inc.,* 560 F.Supp. 908, which Cyanamid cites, does not hold that the released value must have a reasonable relationship to actual value, nor does it hold that the reasonableness of released value limitations is always a jury matter. The opinion denied a carrier's motion to dismiss on jurisdictional grounds, which the carrier predicated on a released value clause limiting its liability to $4,000, a figure below the $10,000 jurisdictional

floor in 28 U.S.C. § 1337(a). But inasmuch as the motion to dismiss was denied at least in part because it was not clear that the plaintiff was bound on agency principles by the released value clause which it did not sign, the case is not germane here. Cyanamid also cites other cases, *e.g., Gonzalez v. Romanisko,* 744 F.Supp. 95 (M.D.Pa.1990), *aff'd,* 941 F.2d 1201 (3d Cir.1991) (table), for the proposition that juries determine questions of reasonableness, but those cases do not involve released value provisions.

**9.** New Penn characterizes Cyanamid's claim that New Penn intentionally breached the bill of lading as a ludicrous, unsupported allegation. We, however, will accept Cyanamid's claim for purposes of this appeal.

al destruction or conduct in the nature of theft of the property will permit a shipper to circumvent the liability limitations in a released value provision. This is an understandable and desirable result, as a shipper can protect itself from loss by paying for a higher level of protection. Furthermore, when goods are lost or destroyed during transportation, there probably will be many circumstances in which a shipper will be able reasonably to characterize the carrier's conduct as willful, and a rule of law allowing recovery in excess of the released value, if willfulness can be demonstrated, will lead to increased litigation. We think it better that there be certainty in these commercial settings, particularly since the shipper can protect itself by paying for a higher level of protection.

■ Cyanamid seeks to avoid the result we reach by urging that it "is a well-established principle of contract law that a party which breaches a contract cannot invoke the benefits of that same contract." Brief at 15. While this may be true in many circumstances, it can hardly be true here for New Penn relies on a clause in the bill of lading which directly governs its liability when it breaches its contract by not delivering the goods as it agreed. Thus, as noted in *Quasar Co. v. Atchison, Topeka and Santa Fe Ry. Co.,* 632 F.Supp. 1106, 1108 (N.D.Ill.1986), "[m]ost courts have found ... that a liability limitation is unaffected by a breach of an essential term of the contract."

■ Cyanamid attempts to distinguish *Deiro* by correctly pointing out that that case did not involve an intentional deviation from the terms of the bill of lading. But we consider *Deiro* in tandem with *Rocky Ford* and the principle we apply is adopted from both cases. Cyanamid also points out that *Rocky Ford* was decided in 1974 when Congress was concerned with "the overriding federal policy of uniformity," *Rocky Ford,* 501 F.2d at 1372, of rates and terms among carriers. Brief at 17. It then urges that with the passage of the Motor Carrier Act of 1980, Pub.L. No. 96–296, 94 Stat. 793 (1980), Congress abandoned the policy of uniformity. *See Shippers Nat'l Freight Claim Council, Inc. v. ICC,* 712 F.2d at 742. While this is true, we fail to see how this change in law helps Cyanamid. Indeed, the opposite might be thought to be true since, if anything, a liberalization of the right to contract should enhance the ability of shippers and carriers to agree on released value clauses. *See also Quasar Co.,* 632 F.Supp. at 1113.[10]

### IV.

### CONCLUSION

The order of April 15, 1992, will be affirmed.

---

**10.** Cyanamid cites *De Laval Turbine, Inc. v. West India Indus., Inc.,* 502 F.2d 259, 270 n. 16 (3d Cir.1974), in support of its contention that New Penn's deviation from the bill of lading precludes New Penn from relying on the released value clause. The case, however, insofar as material here is distinguishable because it involved a claim against the carrier for failure to obtain insurance, a failure which the district court held was an unreasonable deviation from the contract of carriage precluding the carrier from relying on the limitation of liability provision in the Carriage of Goods by Sea Act. Of course, a failure to carry insurance is not a deviation in the method of handling the shipment and in fact is a deviation which deprives the shipper of coverage for a loss rather than a physical protection against a loss. In any event, we did not review the district court opinion on this point and thus this panel is not bound by that case. *See id.* at 263 n. 4, 270 n. 16. *Fine*

*Foliage of Florida, Inc. v. Bowman Transp., Inc.,* 901 F.2d 1034 (11th Cir.1990), also cited by Cyanamid, is not germane. While Cyanamid cites the case for the proposition that a carrier accepting goods with the explicit requirement that they be protected from certain temperature conditions will be liable for damages which result if it does not satisfy the condition, the actual holding is, as Cyanamid itself notes, "that the Carmack Amendment prohibits a carrier from relying on a protective service tariff to exempt itself from liability for negligent use of a refrigerated container once it accepts goods for shipment that require refrigeration." *Id.* at 1044. But New Penn does not contend that it is *exempt* from liability. To the contrary, it relies on the released value clause only to *limit* its liability, a contention that raises different considerations than those before the court in *Fine Foliage. See* 901 F.2d at 1040–44.